The appellant, Bertha Carter Miles, was indicted on one count of unlawful possession of cocaine, in violation of §13A-12-212(a)(1), Code of Alabama 1975, and on four counts of unlawful distribution of cocaine, in violation of § 13A-12-211, Code of Alabama 1975. Initially, all five counts were consolidated for trial, but before trial, the possession count and two of the distribution counts were removed from the consolidation order. A jury returned verdicts of guilty on the remaining two distribution counts, and Miles later entered a plea of guilty to the possession count. On each of the two distribution convictions, the trial court sentenced Miles to life in prison, the sentences to run concurrently. The trial court also added five years' imprisonment to each sentence, pursuant to § 13A-12-250, Code of Alabama 1975, because both offenses occurred within three miles of a school. Miles also was sentenced to 15 years in prison on the possession conviction, which was to run concurrently with her sentences on the distribution convictions. According to Miles's notice of appeal, she is appealing all three convictions.
The evidence adduced at trial tended to establish the following. Michael George Duldt of the Birmingham Police Department testified that on August 5, 1992, at about 10:55 p.m., he drove to a house at 1824 Old Springville Road. Duldt, who said he was working undercover that night, testified that he parked his car in the yard, then entered through a privacy fence. He went to the first window at the house and tapped on it. Duldt testified that a woman came to the window, asked what he needed, then gave him five plastic sandwich bags containing crack cocaine in return for $50. Duldt identified Miles as the woman who sold him the crack cocaine. Duldt testified that the next night, August 6, at about 10:30 p.m., he followed the same routine, purchasing another five sandwich bags of crack cocaine for $50. Once again, he identified Miles as the woman who sold him the drugs. Over the defense's objection, Duldt then testified that nearly two weeks later, August 18, at about 10:50 p.m., he went to the same house, and again followed the same routine, this time purchasing *Page 585 
$100 worth of crack cocaine from Miles. Duldt testified that on August 22, at about 6:50 p.m., again following the same routine, he purchased another $100 worth of crack cocaine from Miles. Miles was not tried for these last two sales. Danny Kirkpatrick of the Alabama Department of Forensic Sciences testified that he determined that the substance Duldt purchased on August 6 and 7 was cocaine.
During Duldt's cross-examination, the defense questioned the ownership of the house, questioned why no fingerprints were lifted from the bags the crack cocaine was packaged in, and attempted to cast doubt upon whether Duldt had a good enough view of the person who sold him the drugs to be able to truly identify that person at trial, thereby putting identity in issue. In response, the State presented testimony from Michael Anthony Saxton of the Jefferson County Sheriff's Department regarding the execution of a search warrant at 1824 Old Springville Road on June 11, 1992, about two months before the sale at issue in this case occurred. Saxton testified that when executing the search warrant, law enforcement officials found about 40 packages of crack cocaine in a bedroom at the house, and he identified Miles as the woman he saw at the house that day. He also said that Miles, whom he knew as Bertha Mae Carter, told him that she lived in the house with her grandchildren. No other adults were in the home when law enforcement officials conducted the search, Saxton said.
Miles raises only one issue on appeal. She contends that Duldt's testimony regarding the drug buys that occurred on August 18 and August 22, which were not offenses for which she was being tried, and Saxton's testimony regarding the execution of the search warrant were admitted in violation of the general exclusionary rule of character evidence. Miles correctly states that evidence of offenses not charged in an indictment is generally inadmissible. Giddens v. State, 565 So.2d 1277, 1280
(Ala.Crim.App. 1990). See C. Gamble, McElroy's AlabamaEvidence, § 69.01 (4th ed. 1991). However, there are exceptions to the exclusionary rule, including res gestae or continuous transaction, identity, or common plan or scheme. Giddens, supra; Jordan v. State, 629 So.2d 738 (Ala.Crim.App. 1993).
 " 'Evidence of the accused's commission of another crime is admissible if such evidence, considered with other evidence in the case, warrants a finding that both the now-charged crime and such other crime were committed in keeping with or pursuant to a single plan, design, scheme or system. This rule is applicable whether such plan, design, scheme or system is narrow and specific in scope or is measurably broad and general in scope.' "
Rowell v. State, 570 So.2d 848, 852-53 (Ala.Crim.App. 1990) (quoting C. Gamble, McElroy's Alabama Evidence, § 69.01(6) (3d ed. 1977)).
In this case, Duldt made four purchases of crack cocaine in just under three weeks' time. Duldt testified that he followed the same routine in making each buy, that each buy was made at the same location, and that each buy was made from the same person. Because the facts surrounding the collateral offenses are identical to the facts of the charged offenses, the offenses are logically connected and evidence a common plan, scheme, or system by Miles to deal in crack cocaine. See Nailv. State, 629 So.2d 772 (Ala.Crim.App. 1993). Therefore, the common plan or scheme exception permits the admissibility of the collateral offense evidence as testified to by Duldt. Clearly, the evidence of the collateral offenses tended to prove that Miles was guilty of distributing crack cocaine rather than simply to show her bad character. Additionally, because Miles put identity at issue in this case, evidence that Duldt had the opportunity to see her on four occasions strengthens his identification of Miles as the woman who sold him the crack cocaine.
As to Saxton's testimony regarding the search warrant execution at Miles's home, the record shows that the defense objected to that testimony when the State notified the trial court of its intention to call Saxton and explained what Saxton's testimony would be. However, the defense did not object to the testimony when Saxton testified at trial. *Page 586 
 "A party who suffers an adverse ruling on a motion in limine can preserve the ruling for post-judgment and appellate review only by objecting to the introduction of the proffered evidence and assigning specific grounds at the time of trial, unless he or she obtains the express acquiescence of the trial judge that a subsequent objection and assignment of grounds are not necessary."
Parks v. State, 587 So.2d 1012, 1015 (Ala. 1991) (emphasis in the original). Because Miles did not object to the introduction of Saxton's testimony except during the motion in limine, and because Miles did not obtain the express acquiescence of the trial court that such an objection was not necessary, this issue is not properly before this court.
For the above reasons, we hold that the trial court did not err in allowing the challenged testimony. The judgment of the trial court is affirmed.
AFFIRMED.
All the Judges concur.